EXHIBIT "A"

**INJUNCTION BOND**

F I L E D

SEP 0 7 2021

EDDIE JEAN CARR, CHANCERY CLERK     Case No. 21 - 1148

BY _____ D.C.

Bond # __107503675__

KNOW ALL BY THESE PRESENTS:

That we,  **STREET TOYZ CUSTOMS, LLC** _____

as Principal(s), and  **Travelers Casualty and Surety Company of America** _____ , a

corporation authorized to transact surety business in the State of **CONNECTICUT**, as Surety, are held

and firmly bound unto **Hinds County Chancery Court** _____ , as Obligee, in the maximum

penal sum of **Fifteen Thousand** _____

(    **$15,000.00**    ) DOLLARS, lawful money of the United States of America, for the payment of which,
well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns,
jointly and severally, firmly by these presents.

Whereas, the above named plaintiff has duly applied to this court for a writ of injunction against the
defendant in this action, according to the statute in such cases provided.

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That, if the said plaintiff shall pay
the said defendant such damages as he sustains by reason of said temporary injunction, if the Court
finally decided that the said plaintiff is not entitled thereto (or to either or any of them, if more than one
defendant), then this obligation shall be void, otherwise to remain in force and effect.

SIGNED AND SEALED this ____07____ day of ____September____ , ____2021____ .

**STREET TOYZ CUSTOMS, LLC** _____

By _____
                                                                                              Principal

**Travelers Casualty and Surety Company of America** _____

By _____
    ANGELA BULLIE                                          Attorney-in-Fact

Received by SVanKin



 **TRAVELERS**⌡

Travelers Casualty and Surety Company of America
Travelers Casualty and Surety Company
St. Paul Fire and Marine Insurance Company
Farmington Casualty Company

### POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:** That Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, St. Paul Fire and Marine Insurance Company, and Farmington Casualty Company are corporations duly organized under the laws of the State of Connecticut (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint **ANGELA BULLIE**, of **JACKSON**, **MS**, their true and lawful Attorney(s)-in-Fact, to sign, execute, seal and acknowledge the following bond:

Surety Bond No.: **107503675**                    Principal: **STREET TOYZ CUSTOMS, LLC**

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this **21st** day of **April, 2021**.

   

State of Connecticut

By: _____

City of Hartford ss.

Robert L. Raney, Senior Vice President

On this the **21st** day of **April, 2021**, before me personally appeared **Robert L. Raney**, who acknowledged himself to be the Senior Vice President of each of the Companies, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of said Companies by himself as a duly authorized officer.

**IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

My Commission expires the **30th** day of **June, 2026**

Anna P. Nowik, Notary Public

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of each of the Companies, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

**I, Kevin E. Hughes**, the undersigned, Assistant Secretary of each of the Companies, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which remains in full force and effect.

Dated this 07 day of September, 2021.

   

Kevin E. Hughes, Assistant Secretary

*To verify the authenticity of this Power of Attorney, please call us at 1-800-421-3880.*
*Please refer to the above-named Attorney(s)-in-Fact and the details of the bond to which this Power of Attorney is attached.*

IN THE CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI
1ST JUDICIAL DISTRICT

STREETTOYZ CUSTOMS, LLC                                    PLAINTIFF

VS.                                    CAUSE NO. _2021-1148_

LENDTERRA, INC.,
RUBIN LUBIN, LLC, SUBSTITUTE
TRUSTEE, AND JOHN DOES 1-5                              DEFENDANTS

## SUMMONS

TO:   Rubin Lubin, LLC
      428 North Lamar Blvd, Suite 107
      Oxford, Mississippi 38655

THE **COMPLAINT** WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

YOU ARE REQUESTED TO MAIL OR HAND-DELIVER A COPY OF WRITTEN RESPONSE EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO: **Cody W. Gibson and Wm. Scott Mullennix, 1755 Lelia Drive Suite 300, Jackson, MS 39216.**

THIS RESPONSE MUST BE MAILED OR DELIVERED WITHIN **THIRTY (30)** DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT OR A JUDGMENT BY DEFAULT WILL BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THIS COMPLAINT.

YOU MUST ALSO FILE THE ORIGINAL OF YOUR RESPONSE WITH THE CLERK OF THIS COURT AS PROVIDED BY LAW.

WITNESS MY SIGNATURE AND OFFICIAL SEAL, this the _7th_ day of September 2021.



EDDIE JEAN CARR
Hinds County Circuit Clerk
_R. Howard_ D.C.

PREPARED BY
CODY W. GIBSON, MSB# 103967
Wm. SCOTT MULLENNIX, MSB# 104859
GIBSON & MULLENNIX, PLLC

**F I L E D**

**IN THE CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI** SEP 07 2021
**1ST JUDICIAL DISTRICT**

EDDIE JEAN CARR, CHANCERY CLERK

BY _____ D.C

STREETTOYZ CUSTOMS, LLC                                                    **PLAINTIFF**

VS.                                                        CAUSE NO. 21-1148

LENDTERRA, INC.,
RUBIN LUBIN, LLC, SUBSTITUTE
TRUSTEE, AND JOHN DOES 1-5                                          **DEFENDANTS**

---

### TEMPORARY RESTRAINING ORDER

---

THIS DAY THIS CAUSE came on to be heard upon the Complaint for Damages and for Injunctive Relief, and the Court having carefully examined the verified Complaint and having heard the argument of counsel for Plaintiff, Street Toyz Customs, finds and orders:

1.      This Court has jurisdiction over the parties and subject matter.

2.      Based on the Verified Complaint, the Court finds the Plaintiff has shown a probability of success on the merits regarding factual allegations regarding stopping the foreclosure sales.

3.      The Court has balanced the hardship of granting or denying a Temporary Restraining Order and finds that such balancing favors the Plaintiffs, in that if injunctive relief were not issued in the form of a Temporary Restraining Order to preserve the status quo pending a hearing on a preliminary injunction, immediate and irreparable harm would result to the Plaintiff. If the injunctive relief applied for were not ordered, the Plaintiff would suffer immediate and irreparable injury, loss or damage, and that damage would be suffered before the Plaintiff or their attorney could be heard.

4.      The Court finds that the Plaintiff lacks any adequate remedy at law.

5.      The Plaintiff is entitled to a Temporary Restraining Order enjoining the foreclosure sale scheduled for September 8, 2021 between the hours of 11:00 am and 4:00 pm.

6.      The Court finds that it is necessary to grant a Temporary Restraining Order without notice to the Defendants so as to prevent immediate and irreparable harm as set forth in the Plaintiffs' verified Complaint.

7.    Pursuant to Rule 65(c) of the Mississippi Rules of Civil Procedure, the Court directs that security be posted in the form of a bond by the Plaintiffs, in the amount of $ 15,000.ºº .

IT IS THEREFORE, ORDERED AND ADJUDGED, that the Defendants, Lendterra, Inc., and Rubin Lubin, LLC are hereby enjoined and shall cease from proceeding with the said foreclosures of the subject properties until this matter may be fully addressed by this Court on the merits.

IT IS FURTHER ORDERED AND ADJUDGED that Complaint for Damages and for Injunctive Relief filed by Plaintiffs shall be set down for hearing on September 16 , 2021 at 1:30 o'clock a.m. p.m. before the undersigned at the Hinds Chancery County Courthouse, in Jackson, Mississippi.

IT IS FURTHER ORDERED AND ADJUDGED, that this Temporary Restraining Order shall be in force and effect until the aforesaid hearing on September 16 , 2021 at 1:30 o'clock a.m. p.m.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiffs shall post a bond in the amount of $ 15,000º with the Clerk of this Court on or before September 8, 2021 at 11:00 am.

SO ORDERED AND ADJUDGED this the 7th day of September, 2021 at 2:09 o'clock a.m. p.m.

Tiffany Grove
CHANCERY COURT JUDGE

Prepared and submitted by:

CODY W. GIBSON, MSB# 103967
Wm. SCOTT MULLENNIX, MSB # 104859
GIBSON AND MULLENNIX, PLLC
1755 Lelia Drive Suite 300
Jackson, MS 39216
TELEPHONE: 601-948-9840; FACSIMILE: 601-487-5341

2

**FILED**

SEP 07 2021

EDDIE JEAN CARR, CHANCERY CLERK

BY ___K. Howard___ D.C.

IN THE CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI
1ST JUDICIAL DISTRICT

STREETTOYZ CUSTOMS, LLC

                                                    PLAINTIFF

VS.                                    CAUSE NO. G2021-1148 G/2

LENDTERRA, INC.,
RUBIN LUBIN, LLC, SUBSTITUTE
TRUSTEE, AND JOHN DOES 1-5                         DEFENDANTS

## COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF

COMES NOW the Plaintiff, STREETTOYZ CUSTOMS, LLC, and files this Complaint for Damages and for Injunctive Relief, and for cause would show unto the Court the following, to wit:

### Parties

1)    Plaintiff, STREETTOYZ CUSTOMS, LLC, is a corporation organized and existing under the laws of the state of Mississippi.

2)    Based upon information and belief, Defendant, LENDTERRA, INC., is a limited liability company organized and existing under the laws of the state of California and may be served with process by serving its registered agent for service of process, ParaCorp Incorporated, 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

3)    Based upon information and belief, Defendant, RUBIN LUBIN, LLC, Substitute Trustee, is a law firm registered to do business in the state of Mississippi and may be served with process at their usual place of business Rubin Lubin, LLC 428 North Lamar Blvd, Suite 107, Oxford, Mississippi 38655.

4)    Defendants John Does 1-5 are defendants pursuant to the MRCP 9(h) that may be

1

liable in this civil action and whose identities are unknown to the Plaintiff at this time but are expected to be identified during the course of litigation.

Jurisdiction and Venue

5)      Jurisdiction over the subject matter is proper in this Court.

6)      Venue is proper in this Court as part of the conduct complained of and real property herein occurred in Hinds County, Mississippi.

STREETTOYZ CUSTOMS, LLC

8)      STREETTOYZ CUSTOMS, LLC is the owner of the subject property located in Hinds County, Mississippi at 825 S. West Street, Jackson, Mississippi 39201 and more particularly described in Exhibit "A" which is incorporated herein by reference in its entirety.

9)      On January 22, 2019, STREETTOYZ CUSTOMS, LLC executed a Deed of Trust, to McGehee Loan Closings, Trustee, in favor of LENDTERRA, INC. (hereinafter "Lendterra") was filed and recorded on January 24 2019, Deed Book 7230 Page 3230 in the Office of the Hinds County Chancery Clerk at Jackson, Mississippi. See Exhibit "$A$".

10)     On July 15, 2021 Lendterra appointed substituted RUBIN LUBIN, LLC, a Substitute Trustee to act as its agent, in the place of McGehee Loan Closings, the original trustee, the Substitution of Trustee recorded on or about July 15, 2021 in the Office of the Hinds County Chancery Clerk at Jackson, Mississippi.

11)     A Substitute Trustee's Notice of Sale on the aforesaid Deed of Trust has been set for the 8TH day of September, 2021 between the hours of 11 AM and 4 PM.

12)     The subject property consists of a business run by the Plaintiff.

FACTS

13)     Plaintiff alleges and incorporates herein by reference the preceding paragraphs above.

2

14)   Lendterra and its authorized representative, made various representations to Plaintiffs regarding management, operations, and the loans of the subject properties. Plaintiff has requested numerous times through counsel and other representatives for an accounting and for explanations on the balance of the loan. There are numerous late charges and accelerations that the Plaintiff does not believe exists and would show there is no justifiable basis for said charges. Plaintiff cannot pay off the loan or continue to pay the loan until the loan is correctly accounted for and correctly calculated.

<u>Count I – Breach of Implied Contract of Good Faith and Fair Dealing/Bad Faith</u>

15)   Plaintiffs reallege each and every allegation of the previous paragraphs and incorporate them by reference in this Count.

16)   There is implied in every contract a covenant of good faith and fair dealing, requiring at minimum that the parties to the contract act in a manner of good faith and deal with one another fairly. The implied covenant of good faith and fair dealing required Lendterra among other things to deal fairly with Plaintiffs.

17)   Lendterra breached this implied covenant of good faith and fair dealing by various representations made to Plaintiffs by ~~Chip Cummings, the former President or Owner of Lendterra~~ by Defendants and its authorized representative, regarding management, operations, and the loans of the subject properties. As a proximate cause or result of Lendterra's conduct and breach, Plaintiffs have been damaged. The breach of contract was wholly unsupported by any arguable reasons, was willful and in bad faith. Plaintiffs are, therefore, entitled to actual damages, as well as an award of punitive damages and attorney's fees.

<u>Count II - Promissory Estoppel/Detrimental Reliance</u>

18)   Plaintiff realleges each and every allegation of the previous paragraphs and incorporate them by reference in this Count.

3

19)    Plaintiff detrimentally relied upon the promises, assurances and representations of Lendterra and its authorized representative which has caused Plaintiffs damages and to which they are entitled to damages as requested herein.

### Count III – Accounting

20)    Plaintiff realleges each and every allegation of the previous paragraphs and incorporate them by reference in this Count.

21)    Plaintiff has requested from Defendants the amounts related to, accounted for, and all amounts applied to the loan. Defendants have failed and/or refused to do so and still fail and refuse to do so and have never rendered a full and true accounting to Plaintiff.

22)    Plaintiff should be granted a full accounting of all amounts regarding the loan and how any funds from said accounts have been spent or otherwise applied.

### Count IV - Injunctive Relief

23)    Plaintiff realleges each and every allegation of the previous paragraphs and incorporate them by reference in this Count.

24)    Plaintiff prays that the Court enjoin foreclosure proceedings until a trial on the merits can be heard, and that following a trial on the merits the Court grant permanent injunctive relief prohibiting Defendants herein from taking any other and further action to deprive Plaintiff of the said property.

25)    Plaintiff alleges further that they have no adequate remedy at law, that they will suffer irreparable harm if injunctive relief is not granted, that the irreparable harm they will suffer if injunctive relief is not granted is greater than the irreparable harm Defendants will suffer if such relief is granted, that they have a reasonable likelihood of prevailing on the merits, and that the requested injunctive relief will not harm the public interest.

26)     Plaintiff acknowledge that if injunctive relief cannot be granted by the scheduled foreclosure date of September 8, 2021 on the aforesaid properties and Defendants proceed with the foreclosure actions, that all adequate remedies of law be applied to set aside such foreclosure actions.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, STREETTOYZ CUSTOMS, LLC and ONRD, Inc., request that Judgment by the Court be entered against Defendants, herein, as follows:

a.     Enjoin foreclosure proceedings until a trial on the merits can be heard, and that following a trial on the merits the Court grant preliminary and permanent injunctive relief in favor of Plaintiff and that a reasonable bond or security be set;

b.     Awarding compensatory damages, punitive damages and attorney's fees, together with interest, all costs of court, and such other and further relief as the Court may deem just and proper.

c.     Awarding interest, including pre-judgment and post-judgment interest;

d.     Awarding attorneys' fees and costs;

e.     If such foreclosure does occur prior to a hearing herein then that all appropriate cause of action in law be applied to set the foreclosure aside, and

f.     Granting such other and further relief as the nature of the case may require and as the Court deems just and proper under the circumstances.

Respectfully submitted,

STREETTOYZ CUSTOMS, LLC AND ONRD, INC.

Cody W. Gibson

OF COUNSEL:

CODY W. GIBSON, MSB #103967
Wm. SCOTT MULLENNIX, MSB # 104859
GIBSON AND MULLENNIX, PLLC
1755 Lelia Drive Suite 300
Jackson, MS 39216
TELEPHONE: 601-948-9840; FACSIMILE: 601-487-5341
EMAIL: cwgibsonlaw@gmail.com
          mullennixlaw@gmail.com


STATE OF MISSISSIPPI
COUNTY OF HINDS

     PERSONALLY appeared before me, the undersigned authority in and for the County and State aforesaid, the within named Walter Stewart, being the President of STREETTOYZ CUSTOMS, LLC, who acknowledged to me on information and belief that all matters, facts and things set forth in the above and foregoing Complaint for Damages and Injunctive Relief, are true and correct as therein stated, that he signed and executed same on the day therein stated, and that he is the President of STREETTOYZ CUSTOMS, LLC, with authority to act herein for and on behalf of said STREETTOYZ CUSTOMS, LLC

_____
Walter Stewart, President

SWORN TO AND SUBSCRIBED before me this _____ day of September, 2021.

_____
NOTARY PUBLIC

My Commission Expires:

6-8-2025

6

IN THE CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI
1ST JUDICIAL DISTRICT

STREETTOYZ CUSTOMS, LLC                                          PLAINTIFF

VS.                                        CAUSE NO._____

LENDTERRA, INC.,
RUBIN LUBIN, LLC, SUBSTITUTE
TRUSTEE, AND JOHN DOES 1-5                                      DEFENDANTS

_____
                           AFFIDAVIT OF ATTORNEY
_____

      The undersigned attorney for Plaintiff, Streettoyz Customs, LLC, hereby shows and verifies the following:

      1.     That the undersigned attorney has not contacted Lendterra, Inc., Rubin Lubin, LLC, or their respective counsel; that upon information provided to him, the undersigned has great concern that Lendterra, Inc., and Rubin Lubin, LLC have acted in a manner to cause great harm to the Streettoyz Customs, LLC and is concerned that if a temporary restraining Order is not issued that Streettoyz Customs, LLC may suffer immediate and irreparable harm; Moreover, the undersigned attorney fears that notice to the Defendants, could cause them to engage in a course of conduct that would detrimental to Plaintiff.

      2.     That the undersigned attorney shows and alleges that the Court should conduct a hearing upon the Emergency Complaint for Temporary Restraining Order filed by Plaintiff, Streettoyz Customs, LLC, without notice for the reason that immediate and irreparable injury, loss, and damage will result to Streettoyz Customs, LLC before the adverse parties, Lendterra, Inc., Rubin Lubin, LLC, or their counsel can be heard in opposition to the Emergency Complaint for a Temporary Restraining Order and/or Permanent Injunction, for Accounting and for Discovery.

                                    _____
                                      Cody W. Gibson
                                      Attorney for Plaintiff

SWORN AND SUBSCRIBED before me, this the 7th day of September, 2021.

                                    _____
                                      NOTARY PUBLIC

*(Notary seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 291397, WILLIAM SCOTT MULLENNIX, Commission Expires June 8, 2025, MADISON COUNTY)*

MY COMMISSION EXPIRES: 6-8-2025

1659903

BOOK 7230 PAGE 3230

| Prepared by/ Return to: | Borrower: | Lender: |
|---|---|---|
| LENDTERRA, INC.<br>20281 Birch St., Suite 200<br>Newport Beach, CA 92660 | 731 Hawthorn Green Dr.<br>Ridgeland, MS 39157 | LENDTERRA, INC.<br>20281 Birch St., Suite 200<br>Newport Beach, CA 92660 |

| Trustee: |
|---|
| MCGEHEE LOAN CLOSINGS INC.<br>1755 Lelia Drive, Suite 303<br>Jackson, MS 39216 |

| Indexing Instructions: |
|---|
| Lot 53, H. C. Daniel's Map of the City of Jackson, MS & Lot 7 of Muh's partition Hinds County MS, Tax parcel #179-12-10 |

## DEED OF TRUST,
## ASSIGNMENT OF RENTS
## AND SECURITY AGREEMENT
## (MISSISSIPPI)

**ORIGINAL**

### THIS DEED OF TRUST SECURES A LOAN OR LINE OF CREDIT
### TO BE USED PRIMARILY FOR COMMERCIAL PURPOSES

**A.** THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT (this "Instrument") is dated as of **January 22, 2019**, and is given by **STREETTOYZ CUSTOMS, LLC, a Mississippi** limited liability company, whose address is **731 Hawthorn Green Dr., Ridgeland, MS 39157**, as grantor ("Borrower"), to **MCGEHEE LOAN CLOSINGS INC., a Mississippi** corporation, as trustee ("**Trustee**"), for the benefit of **LENDTERRA, INC., a California** corporation, whose address is **20281 Birch St., Suite 200, Newport Beach, CA 92660**, as beneficiary ("**Lender**"). Borrower's organizational identification number is **889492**.

**B.** Borrower in consideration of the Indebtedness and the trust created by this Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale and right of entry and possession, the Mortgaged Property, including but not limited to the Land located in **Hinds** County, State of **Mississippi** and described in Exhibit "A" attached to this Instrument.

**C.** TO SECURE TO LENDER the repayment of the Indebtedness evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on the earlier of (i) **February 1, 2020**, and (ii) the date on which the unpaid principal balance of the Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents, or the exercise by Lender of any right or remedy under any Loan Document (the "**Maturity Date**"), in the principal amount of **EIGHTY THOUSAND AND 00/100 DOLLARS (US $80,000.00)**, and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

**D.** Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to mortgage, grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered, except as shown on the Schedule of Title Exceptions. Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

Mississippi Deed of Trust

BOOK 7 2 3 0 PAGE 3 2 3 1

**Covenants.** In consideration of the mutual promises set forth in this Instrument, Borrower and Lender covenant and agree as follows:

1. **DEFINITIONS.** The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings and any capitalized term not specifically defined in this Instrument shall have the meaning ascribed to that term in the Loan Agreement:

"**Assignment**" means, collectively, the provisions of Sections 3 and 4 of this Instrument relating to the assignment of rents and leases affecting the Mortgaged Property.

"**Attorneys' Fees and Costs**" means (i) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable (whether or not any lawsuit or other proceeding is instituted), including costs of Lender's and Loan Servicer's allocable costs of in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (ii) costs and fees of expert witnesses, including appraisers; and (iii) investigatory fees. As used in this Instrument and in the Note, "Attorneys' Fees and Costs" shall include those awarded by an appellate court.

"**Borrower**" means all Persons identified as "Borrower" in paragraph A of this Instrument, together with their successors and assigns.

"**Collateral Agreement**" means any separate agreement between Borrower and Lender for the purpose of establishing replacement reserves for the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account.

"**Environmental Indemnity**" means that certain Environmental Indemnity Agreement dated the same date as this Instrument, executed by Borrower, as Indemnitor, in favor of Lender, as Indemnitee.

"**Fixtures**" means all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

"**Governmental Authority**" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property or over Borrower.

"**Hazardous Materials**" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

"**Hazardous Materials Laws**" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials or the protection of human health or the environment and apply to Borrower or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Federal Water Pollution

BOOK 7 2 3 0 PAGE 3 2 3 2

Control Act, 33 U.S.C. Section 1251 *et seq.*, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, as amended by the Superfund Amendments Reauthorization Act of 1986, the Materials Transportation Act, 49 U.S.C. Section 1801 *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Solid Waste Disposal Act, as amended, the Clean Air Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, and their state analogs.

"**Improvements**" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

"**Indebtedness**" means the principal of, interest on, and all other amounts due at any time under, the Note, the Loan Agreement, this Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of this Instrument under <u>Section 7</u> of this Instrument or any other applicable provision of the Loan Agreement, this Instrument or any other Loan Document or as permitted by law.

"**Land**" means the land described in Exhibit "A".

"**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

"**Lender**" means the Person or Persons identified as "Lender" in <u>paragraph A</u> of this Instrument, or any subsequent holder of the Note.

"**Loan**" means the loan evidenced by the Note and secured by this Instrument.

"**Loan Agreement**" means the Loan Agreement executed by Borrower in favor of Lender and dated as of the date of this Instrument, as such agreement may be amended from time to time.

"**Loan Documents**" means the Note, this Instrument, the Assignment, the Loan Agreement, the Environmental Indemnity, all guaranties, all indemnity agreements, all Collateral Agreements, O&M Plans, and any other documents now or in the future executed by Borrower, any Guarantor or any other Person in connection with the Loan, as such documents may be amended from time to time.

"**Loan Servicer**" means the Person or Persons that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, this Instrument and any other Loan Document, and otherwise to service the Loan for the benefit of Lender. Unless otherwise specified in Section 2 of the Note, or unless Borrower receives notice to the contrary, the Loan Servicer means the Person or Persons identified as "Lender" in <u>paragraph A</u> of this Instrument.

"**Mortgaged Property**" means all of Borrower's present and future right, title and interest in and to all of the following: (1) the Land; (2) the Improvements; (3) the Fixtures; (4) the Personalty; (5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated; (6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement; (7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof; (8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations; (9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; (10) all Rents and Leases; (11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property,

Mississippi Deed of Trust                                                                                                          Page 3

BOOK 7 2 3 0 PAGE 3 2 3 3

and all undisbursed proceeds of the Loan; (12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all Imposition Deposits) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account; (13) all refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Instrument is dated); (14) all tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits; and (15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

"Mortgaged Property UCC Collateral" means any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof.

"Note" means the Promissory Note described in paragraph C of this Instrument, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

"Person" means any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

"Personalty" means all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements; (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land or the Improvements and including subsidy or similar payments received from any sources, including a Governmental Authority; and (vii) any rights of Borrower in or under letters of credit.

"Property Jurisdiction" means the jurisdiction in which the Land is located.

"Rents" means all rents, revenues and other income of the Land or the Improvements, including parking fees, laundry and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants.

"Schedule of Title Exceptions" means title exceptions approved by Lender and shown in the schedule of exceptions to coverage in the title policy issued to Lender contemporaneously with the recordation of this Instrument and insuring Lender's interest in the Mortgaged Property.

"Taxes" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

2.    UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.

(a)    This Instrument is also a security agreement under the Uniform Commercial Code for the Mortgaged Property UCC Collateral, and Borrower, as debtor, hereby grants to Lender, as secured party, a security interest in the

BOOK 7 2 3 0 PAGE 3 2 3 4

Mortgaged Property UCC Collateral. Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such financing statements, continuation statements and amendments. Without limiting the generality of the foregoing, Borrower authorizes Lender to file any financing statement that describes the collateral as "all assets" of Borrower, or words to similar effect. Borrower shall pay all filing costs and all costs and expenses of any record searches for financing statements and/or amendments that Lender may require. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the Mortgaged Property UCC Collateral. Unless Borrower gives notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower shall not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add to or change any location at which any of the Mortgaged Property UCC Collateral is stored, held or located. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the Mortgaged Property UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

3.   ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.

(a)   As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)   After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c)   Borrower represents and warrants to Lender that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the Loan),

BOOK 7 2 3 0 PAGE 3 2 3 5

that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than one (1) month prior to the due dates of such Rents.  Borrower shall not collect or accept payment of any Rents more than one (1) month prior to the due dates of such Rents.

(d)       If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable.  Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence.  If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.  Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property.  Immediately upon appointment of a receiver or immediately upon Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower shall surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and shall deliver to Lender or the receiver, as the case may be, all documents, records (including computer files and other records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.  In the event Lender takes possession and control of the Mortgaged Property, Lender may exclude Borrower and its representatives from the Mortgaged Property.  Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(e)       If Lender enters the Mortgaged Property, Lender shall be liable to account only to Borrower and only for those Rents actually received.  Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

(f)        If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an additional part of the Indebtedness as provided in Section 7.

(g)       Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

4.        ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.

(a)       As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.  It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases.  Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.  For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1.  However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of Lender, which lien shall be effective as of the date of this Instrument.

Mississippi Deed of Trust                                                                                                    Page 6

BOOK 7 2 3 0 PAGE 3 2 3 6

(b)       Until Lender gives notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section 4 or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend any Lease. In no event, however, shall Borrower have the right to terminate any lease or to modify the terms of any lease so as to decrease the rent or shorten the term of the lease without the prior written consent of Lender. Any purported termination or modification of any lease without Lender's prior written consent in violation of the preceding sentence shall constitute an Event of Default and shall be void and of no force or effect. Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the first sentence of this Section 4(b) to exercise rights, power and authority under Leases shall automatically terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)       Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements. The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses. Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property. Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (i) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (ii) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (iii) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property. The execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

(d)       Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e)       Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect.

(f)       Borrower further covenants with Lender that (i) all Leases shall be written on a standard form of lease that has been or will be approved in writing in advance by Lender; (ii) upon request, Borrower shall furnish Lender with executed copies of all Leases and all amendments thereto; (iii) no material changes may be made to the Lender-approved standard lease without the prior written consent of Lender; (iv) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (v) all Leases shall provide that (A) they are subordinate to this Instrument and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) lessees agree to attorn to Lender (such attornment to be effective upon Lender's acquisition of title to the Mortgaged Property), (C) lessees agree to execute such further evidences of attornment as Lender may from time to time request, (D) the attornment of lessees shall not be terminated by foreclosure, (E) Lender may, at Lender's option, accept or reject such attornment, and (F) lessees agree to execute and acknowledge a subordination, attornment and non-disturbance agreement in form and content acceptable to Lender, and, two times in any calendar year, as Lender may request, a certificate signed by lessee confirming and containing such factual certifications and representations deemed appropriate by Lender; (vi) Borrower shall not grant any purchase options without the prior written approval of Lender; and (vii) all new Leases shall be subject to the prior written approval of Lender.

(g)       Borrower shall not receive or accept Rent under any Lease for more than one (1) month in advance.

5.       **PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS; PREPAYMENT PREMIUM.** Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents. Borrower shall pay a prepayment premium in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

Mississippi Deed of Trust                                                                                                           Page 7

BOOK 7 2 3 0 PAGE 3 2 3 7

6.     **APPLICATION OF PAYMENTS.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument and the Note shall remain unchanged.

7.     **PROTECTION OF LENDER'S SECURITY.**

(a)     If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including (1) payment of fees and out-of-pocket expenses of attorneys, accountants, inspectors and consultants, (2) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (3) procurement of the insurance required by Section 4.02 of the Loan Agreement, (4) payment of amounts which Borrower has failed to pay under Sections 4.01 and 4.06 of the Loan Agreement, and (5) advances made by Lender to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a "**Prior Lien**").

(b)     Any amounts disbursed by Lender under this Section 7, or under any other provision of this Instrument that treats such disbursement as being made under this Section 7, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "**Default Rate**", as defined in the Note.

(c)     Nothing in this Section 7 shall require Lender to incur any expense or take any action.

8.     **EVENTS OF DEFAULT.** An Event of Default under the Loan Agreement shall constitute an Event of Default under this Instrument.

9.     **REMEDIES CUMULATIVE.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. Lender's exercise of any particular right or remedy will not in any way prevent Lender from exercising any other right or remedy available to Lender. Lender may exercise any such remedies from time to time and as often as Lender chooses.

10.     **WAIVER OF STATUTE OF LIMITATIONS, OFFSETS, AND COUNTERCLAIMS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document. Borrower hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Lender or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Lender to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Borrower is obligated to make under any of the Loan Documents.

11.     **WAIVER OF MARSHALLING.** Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

12.     **FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

**13.**    **GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

(a)      This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the "**Property Jurisdiction**").

(b)      Borrower agrees that any controversy arising under or in relation to the Note, this Instrument, or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue, or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise.

**14.**    **NOTICE.** Except as otherwise specified by the laws of the Property Jurisdiction, all notices, demands and other communications required or permitted to be given pursuant to this Instrument shall be given in accordance with Section 8.03 of the Loan Agreement.

**15.**    **SUCCESSORS AND ASSIGNS BOUND.** This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by Section 5.01 of the Loan Agreement shall constitute an Event of Default.

**16.**    **JOINT AND SEVERAL LIABILITY.** If more than one Person signs this Instrument as Borrower, the obligations of such Persons under this Instrument, the Note and other Loan Documents shall be joint and several.

**17.**    **RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.**

(a)      The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Borrower.

(b)      No creditor of any party to this Instrument and no other Person shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (1) any arrangement (a "**Servicing Arrangement**") between Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (2) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

**18.**    **SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents shall be legally severable. If any term or provision of this Instrument, or any other Loan Document, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document shall not be affected thereby, and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

**19.**    **CONSTRUCTION.** The captions and headings of the Sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument. Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this Instrument. All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument. Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." The use of one gender includes the other gender, as the context may require. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Instrument shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument or any other Loan Document), and (b) any reference in this Instrument to any Person shall be construed to include such Person's successors and assigns.

**20.**    **SUBROGATION.** If, and to the extent that, the proceeds of the Loan, or subsequent advances under Section 7, are used to pay, satisfy or discharge a Prior Lien, such Loan proceeds or advances shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

Mississippi Deed of Trust                                                                                              Page 9

BOOK 7 2 3 0 PAGE 3 2 3 9

21. [Intentionally Omitted]

22. ACCELERATION; REMEDIES. At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale and any other remedies permitted by applicable law or provided in this Instrument, the Loan Agreement or any other Loan Document. Borrower acknowledges that the power of sale granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs, and costs of documentary evidence, abstracts and title reports.

If Lender invokes the power of sale, Lender shall send to Borrower, in the manner provided in Section 31, notice of Lender's election to cause the Mortgaged Property to be sold. Trustee shall give notice of sale and shall sell the Mortgaged Property according to the laws of Mississippi. Trustee may sell the Mortgaged Property at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Mortgaged Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Mortgaged Property at any sale.

Trustee shall deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Mortgaged Property so sold without any express or implied covenant or warranty. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made in those recitals. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including Trustee's fees not to exceed 5% of the gross sales price, attorneys' fees and costs of title evidence; (b) to the Indebtedness in such order as Lender, in Lender's discretion, directs; and (c) the excess, if any, to the Person or Persons legally entitled to it.

23. FIXTURE FILING. This Instrument is also a fixture filing under the Uniform Commercial Code of Mississippi.

24. RELEASE. Upon payment of the Indebtedness, Lender or Trustee shall cancel this Instrument. If Trustee is requested to cancel this Instrument, the Note shall be surrendered to Trustee. Borrower shall pay Lender's reasonable costs incurred in canceling this Instrument.

25. SUBSTITUTE TRUSTEE. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by instrument recorded in the county in which this Instrument is recorded. Without conveyance of the Mortgaged Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Instrument and by applicable law.

26. INTERPRETATION. It is the intention of Borrower and Lender that if any provision of this Instrument or any other Loan Document is capable of two (2) constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid. Borrower acknowledges that Lender has attempted in good faith to assure that this Instrument, the Note and all other Loan Documents are in compliance with applicable laws of the Property Jurisdiction and federal laws. Nevertheless, in the event that any provision of this Instrument, the Note or any other Loan Document is not in compliance with any such laws, then the non-complying provision shall be deemed to be deleted or modified to the extent necessary to assure legal compliance. Similarly, in the event any language or disclosure required by applicable laws of the Property Jurisdiction is not contained in the Loan Documents, then the Loan Documents shall be deemed to have been supplemented to add such language or disclosure, or, at Lender's option, Lender may provide such additional language or disclosure. In either event, such legal requirement shall thereby be satisfied and such noncompliance shall be deemed to have been cured for all purposes. Within ten (10) days after written request by Lender, Borrower agrees to execute such documentation as Lender may require to cure any legal compliance issues or deficiencies in the Loan Documents.

27. FUTURE ADVANCES. In addition to the Indebtedness, this Instrument shall (to the extent allowed by applicable law) also secure payment of the principal, interest and other charges due on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Mortgaged Property) when the promissory note evidencing such loan or advance specifically states that it is secured by this Instrument ("Future Advances"), including all extensions, renewals and modifications of any such Future Advances.

28. EXECUTION IN COUNTERPARTS. This Instrument may be executed in multiple counterparts, and the separate signature pages and notary acknowledgments may then be combined into a single original document for recordation.

29. BALLOON PAYMENT NOTICE. The Note secured hereby provides for a balloon payment of the entire Indebtedness upon the Maturity Date of the Note.

30. DOCUMENT IMAGING. Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Instrument and the other Loan Documents, and Lender may destroy or archive the paper

BOOK 7 2 3 0 PAGE 3 2 4 0

originals. Borrower waives (i) any right to insist or require that Lender produce paper originals, (ii) agrees that such images shall be accorded the same force and effect as the paper originals, (iii) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (iv) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Instrument or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

     31.     <u>WAIVER OF TRIAL BY JURY</u>. BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

          **ATTACHED EXHIBIT.** The following Exhibit is attached to this Instrument:
               Exhibit "A"          Description of the Land

         THIS DEED OF TRUST SECURES A FIXED RATE PROMISSORY NOTE. THIS DEED OF TRUST IS A FIRST DEED OF TRUST. NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE MORTGAGED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND AT LENDER'S OPTION THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

         **IN WITNESS WHEREOF,** Borrower has signed and delivered this Instrument under seal (where applicable) or has caused this Instrument to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Borrower intends that this Instrument shall be deemed to be signed and delivered as a sealed instrument.

BORROWER:

STREETTOYZ CUSTOMS, LLC,
a Mississippi limited liability company

By: _____
      WALTER J. STEWART, Sole Member and
      Manager

(SEAL)

BOOK 7 2 3 0 PAGE 3 2 4 1

State of Mississippi                    )
                                       ) ss.
County of _____H i w d  ꞁ _____      )

On _I  ꞁ ꜰ ꞁ ꞁ ꞁ  ꞁ  2 2 ꞁ __, 2019, before me, _____R o ꞁ ꞁ  M ꞁ G ꞁ h ꞁ I _____, Notary Public, personally
appeared **WALTER J. STEWART,**

☑ personally known to me **- OR –**

☑ proved to me on the basis of satisfactory evidence

to be the person(s) who executed the within instrument as **Sole
Member and Manager** on behalf of **STREETTOYZ CUSTOMS,
LLC, a Mississippi limited liability company**, the limited
liability company therein named, and acknowledged to me that
the limited liability company executed the same for the purposes
therein stated.

WITNESS my hand and official seal.

_____
Signature of Notary Public

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 13074
ROGER McGEHEE, JR.
Commission Expires
April 14, 2019
MADISON COUNTY

Place Notary Seal and/or Any Stamp Above

_____
Other Required Information (Printed Name of Notary, Residence, etc.)

BOOK 7 2 3 0 PAGE 3 2 4 2

## EXHIBIT "A"
### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN HINDS COUNTY, STATE OF MISSISSIPPI, AND IS DESCRIBED AS FOLLOWS:

See attached "Exhibit A" for Legal Description

APN: 179-12-10

PROPERTY ADDRESS: 825 S. WEST STREET, JACKSON, MS 39201

BOOK 7 2 3 0 PAGE 3 2 4 3

EXHIBIT "A"

A certain parcel of land situated in and being a part of 7.95 acre; Lot 53, according to the H. C. Daniel's Map of the city of Jackson, Mississippi (1875), and a part of Lot 7 of Mott's Partition in the City of Jackson, Hinds County, Mississippi, containing 22,969.10 square feet or 0.5278 acres, more or less and being more particularly described as follows: Commence at the intersection of the West right of way line of South West Street with the North right of way line of the Illinois Central and Gulf Railroad (as both are now laid out and improved, May, 1986); run thence North 66 degrees 13 minutes 27 seconds West along said North right of way line of the Illinois Central and Gulf Railroad for a distance of 322.47 feet; leaving said North right of way line of the Illinois Central and Gulf Railroad, run thence North 06 degrees 40 minutes 33 seconds East for a distance of 101.05 feet to the Point of Beginning of the parcel of land herein described; continue thence North 06 degrees 40 minutes 33 seconds East for a distance of 76.78 feet; run thence South 80 degrees 39 minutes 27 seconds East for a distance of 301.46 feet to a point on the aforesaid West right of way line of South West Street; run thence South 09 degrees 14 minutes 31 seconds West along said West right of way line of South West Street for a distance of 76.70 feet; leaving said West right of way line of South West Street, run thence North 80 degrees 39 minutes 27 seconds West for a distance of 298.02 feet to the Point of Beginning.



PLAT SHOWING

# CERTAIN PROPERTIES

SITUATED IN AND BEING A PART OF
7.95 ACRE, LOT 53, ACCORDING TO
THE H. C. DANIEL'S MAP OF THE
CITY OF JACKSON, MISSISSIPPI (1875),
AND A PART OF LOT 7 OF MUN'S PARTITION
IN THE CITY OF JACKSON, HINDS
COUNTY, MISSISSIPPI

ONE STORY
METAL BUILDING
(NOT NEW)

POINT OF
BEGINNING

SURVEYED & MAPPED
BY
ROBERT B. BARNES
CIVIL ENGINEER
&
LAND SURVEYOR
4 OLD RIVER PLACE
JACKSON, MISSISSIPPI 39202
NOVEMBER 11, 1992

# RUBIN LUBLIN, LLC
## Attorneys and Counselors at Law
428 North Lamar Blvd, Suite 107
Oxford, MS 38655
TEL (877) 813-0992
FAX (470) 508-9401

**VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Copy Via Regular Mail**

July 15, 2021

STREETTOYZ CUSTOMS, LLC
825 S. WEST STREET
JACKSON, MS 39201

*Notice of Acceleration and Foreclosure*

| | |
|---|---|
| **File No.:** | **LNDT-21-01607-1** |
| **Loan:** | **Deed of Trust from STREETTOYZ CUSTOMS, LLC to LENDTERRA, INC. ("Original Lender")** |
| **Property Address:** | **825 S WEST STREET, JACKSON, MS 39201** |

Please be advised that this law firm represents American Mortgage Fund 1, LLC ("Foreclosing Entity"), successor in interest to the Original Lender on the above-referenced Loan. By separate communication you may have been advised of your rights under the Fair Debt Collection Practices Act (the "FDCPA"), should that Act apply to this proceeding. Nothing in this letter shall prevent you from exercising those rights as set forth in that communication. This letter is to advise you that we have been retained to institute non-judicial foreclosure proceedings against the referenced property. Enclosed you will find a copy of the Notice of Substitute Trustee's Sale that was submitted for publication in connection with a foreclosure sale of the above property. The foreclosure sale is scheduled for **September 8, 2021** ("Sale Date").

The indebtedness secured by said Deed of Trust has been and is hereby declared due because of default under the terms of said Deed of Trust. *The total amount of the debt owed may consist of unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and other charges. To find out the amount needed to either bring the Loan current or to pay off the Loan in full, please call 248-410-6588.* **(Continued on back/next page)**

LNDT-21-01607-1

Please be advised that the Foreclosing Entity intends to enforce the provisions of said Deed of Trust relative to payment of attorneys' fees in connection with the default. Please be further advised that from this point forward, strict compliance with the current terms of the Loan will be required.

In some circumstances the Loan, State Law, and/or the Foreclosing Entity may allow the default on the Loan to be cured and stopping the foreclosure prior to the sale date. You may contact this office to find out if reinstatement of the Loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default. Please be advised that if the default is allowed to be cured on the Loan, payment must be made in the form of cash, cashier's check or certified funds or wired to be received sufficiently in advance of the Sale Date to allow for cancellation of the sale and pursuant to the terms of the Loan.

If you are currently or have within the last twelve (12) months been in the military service AND joined after the date of the Loan, please notify this office immediately. You may be entitled to relief under the Servicemembers Civil Relief Act. You may also call 1-800-342-9647 for further assistance or visit www.militaryonesource.com/SCRA. When contacting this office as to your military service, you must provide us with positive proof as to your military status. If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

We do not believe that you are represented by counsel. If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them. If we do not hear from you we will assume that you are not represented by counsel in relation to the foreclosure.

This notice is not intended to collect the debt against you personally or indicate that you are personally liable for this debt. This notice relates solely to an enforcement of rights with respect to the above-referenced property.

This letter is notice to the extent the FDCPA applies. Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the Foreclosing Entity.

Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

LNDT-21-01607-1

# RUBIN LUBLIN, LLC
### Attorneys and Counselors at Law
428 NORTH LAMAR BLVD, SUITE 107
OXFORD, MS 38655
TEL (877) 813-0992
FAX (470) 508-9401

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Copy Via Regular Mail

## NOTICE OF THE RIGHT TO FORECLOSE

Date of Notice: <u>July 15, 2021</u>

STREETTOYZ CUSTOMS, LLC
825 S. WEST STREET
JACKSON, MS 39201

    The holder of the mortgage, deed of trust, or other lien on your property has the right to begin the process of foreclosing on the debt and may hold the foreclosure at any time after forty-five (45) days from the date of this 45 Day Notice of Right to Foreclose.

    As your loan is matured, below is an itemization of all past-due amounts and any other charges to pay the loan off in full are as follows:

**Itemization of Amount Required to Pay Off Loan**
**Cure Date:**

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| Miscellaneous Fees | 1 | $600.00 | $600.00 |
| Principal Balance | 1 | $80,000.00 | $80,000.00 |
| Unpaid Charges | 1 | $23,441.28 | $23,441.28 |
| Accrued Interest | 1 | $2,025.82 | $2,025.82 |
| **Amount Required as of** | | | **106,067.10** |

LNDT-21-011407-1

If you wish to pay off the loan, you should contact this office or the lender, servicer or creditor listed below immediately prior to remitting any funds so that we may answer any questions and/or verify the exact amount that is due and owing as of the intended receipt date.

You may have options available other than foreclosure and can discuss your options with your mortgage lender or a counselor approved by the U.S. Department of Housing and Urban Development. You should contact the lender, servicer, or creditor listed below to discuss repayment options for which you may qualify, or if none are available, other foreclosure alternatives such as short sale or deed in lieu of foreclosure.

Debt counseling may be available in your area. You can determine if debt counseling is available in your area and locate an approved counselor at the U.S. Department of Housing and Urban Development's (HUD) website at www.HUD.gov. The contact information for one of many HUD approved counseling agents in your area is listed below; however, the aforementioned website will have a full list of approved agencies. If you wish to participate in loss mitigation programs, you must make timely application. You should notify the lender, servicer, or creditor of your interest in participating in one of these programs.

### YOU MUST ACT IMMEDIATELY IF YOU WISH TO TRY TO SAVE YOUR HOME

Property Address: 825 S WEST STREET, JACKSON, MS 39201

Name of Creditor: American Mortgage Fund 1, LLC
Address of Creditor: c/o Lendterra, Inc., c/o Maddin Hauser, 28400 Northwestern Hwy, Suite 200-Essex Centre,
Southfield, MI 48034
Phone: 248-410-6588
Website: Physical Address:
Lendterra, Inc.
1940 E. Thunderbird Rd
Phoenix, AZ 85022
Contact Person: Loss Mitigation Department

Fax: (248) 208-0722
Email Address: mmitchell@maddinhauser.com

HUD Approved Counseling Agency:
Hope Enterprise Corporation
4 Old River Place, Suite A
Jackson, Mississippi 39202
Phone: 601-944-1100    Toll-Free: 1-866-321-4673
Fax: 601-944-0808
Website: www.hope-ec.org/
Contact: info@hope-ec.org

Mississippi Department of Banking and Consumer Finance
PO Box 12129
Jackson, MS 39236-2129
Phone:    (601) 321-6901
Toll free: (800) 844-2499
Website: https://www.dbcf.ms.gov/

Fax: 601-321-6933

LNDT-21-01607-1

Please be advised that the Foreclosing Entity intends to enforce the provisions of said Deed of Trust relative to payment of attorneys' fees in connection with the default. Please be further advised that from this point forward, strict compliance with the current terms of the Loan will be required.

In some circumstances the Loan, State Law, and/or the Foreclosing Entity may allow the default on the Loan to be cured and stopping the foreclosure prior to the sale date. You may contact this office to find out if reinstatement of the Loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default. Please be advised that if the default is allowed to be cured on the Loan, payment must be made in the form of cash, cashier's check or certified funds or wired to be received sufficiently in advance of the Sale Date to allow for cancellation of the sale and pursuant to the terms of the Loan.

If you are currently or have within the last twelve (12) months been in the military service AND joined after the date of the Loan, please notify this office immediately. You may be entitled to relief under the Servicemembers Civil Relief Act. You may also call 1-800-342-9647 for further assistance or visit www.militaryonesource.com/SCRA. When contacting this office as to your military service, you must provide us with positive proof as to your military status. If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

We do not believe that you are represented by counsel. If you are represented by counsel, please notify us immediately and provide the name and address of your lawyer so that we may direct communications to them. If we do not hear from you we will assume that you are not represented by counsel in relation to the foreclosure.

This notice is not intended to collect the debt against you personally or indicate that you are personally liable for this debt. This notice relates solely to an enforcement of rights with respect to the above-referenced property.

This letter is notice to the extent the FDCPA applies. Nothing contained herein or in future notices shall be deemed an admission that the FDCPA applies to this firm's representation of the Foreclosing Entity.

Should the FDCPA apply, please be advised that this firm is acting as a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

LNDT-21-01607-1

NOTICE OF SUBSTITUTE TRUSTEE'S SALE

STATE OF MISSISSIPPI
COUNTY OF 1ST DISTRICT HINDS

WHEREAS, default has occurred in the performance of the covenants, terms and conditions of a Deed of Trust dated January 22, 2019, executed by STREETTOYZ CUSTOMS, LLC , conveying certain real property therein described to MCGEHEE LOAN CLOSINGS, INC., as Trustee, for LENDTERRA, INC., Original Beneficiary, to secure the indebtedness therein described, as same appears of record in the office of the Chancery Clerk of 1st District Hinds County, Mississippi filed and recorded January 24, 2019, in Deed Book 7230, Page 3230 ; and
WHEREAS, the beneficial interest of said Deed of Trust was transferred and assigned to American Mortgage Fund 1, LLC; and
WHEREAS, Rubin Lublin, LLC has been appointed as Substitute Trustee; and
NOW, THEREFORE, the holder of said Deed of Trust, having requested the undersigned so to do, as Substitute Trustee or his duly appointed agent, by virtue of the power, duty and authority vested and imposed upon said Substitute Trustee shall, on **September 8, 2021** within the lawful hours of sale between 11:00AM and 4:00PM at the main north front door of Hinds County Courthouse proceed to sell at public outcry to the highest and best bidder for cash or certified funds ONLY, the following described property situated in 1st District Hinds County, Mississippi, to wit:

A CERTAIN PARCEL OF LAND SITUATED IN AN BEING A PART OF 7.95 ACRE, LOT 53, ACCORDING TO THE H. C. DANIEL'S MAP OF THE CITY OF JACKSON, MISSISSIPPI (1875), AND A PART OF LOT 7 OF MUH'S PARTITION IN THE CITY OF JACKSON, HINDS COUNTY, MISSISSIPPI, CONTAINING 22,989.10 SQUARE FEET OR 0.5278 ACRES, MORE OR LESS AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT THE INTERSECTION OF THE WEST RIGHT OF WAY LINE OF SOUTH WEST STREET WITH THE NORTH RIGHT OF WAY LINE OF THE ILLINOIS CENTRAL AND GULF RAILROAD (AS BOTH ARE NOW LAID OUT AND IMPROVED, MAY, 1986); RUN THENCE NORTH 56 DEGREES 13 MINUTES 27 SECONDS WEST ALONG SAID NORTH RIGHT OF WAY LINE OF THE ILLINOIS CENTRAL AND GULF RAILROAD FOR A DISTANCE OF 322.47 FEET; LEAVING SAID NORTH RIGHT OF WAY LINE OF THE ILLINOIS CENTRAL AND GULF RAILROAD RUN THENCE NORTH 06 DEGREES 40 MINUTES 33 SECONDS EAST FOR A DISTANCE OF 104.05 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED; CONTINUE THENCE NORTH 06 DEGREES 40 MINUTES 33 SECONDS EAST FOR A DISTANCE OF 76.78 FEET; RUN THENCE SOUTH 80 DEGREES 39 MINUTES 27 SECONDS EAST FOR A DISTANCE OF 301.45 FEET TO A POINT ON THE AFORESAID WEST RIGHT OF WAY LINE OF SOUTH WEST STREET; RUN THENCE SOUTH 09 DEGREES 14 MINUTES 31 SECONDS WEST ALONG SAID WEST RIGHT OF WAY LINE OF SOUTH WEST STREET FOR A DISTANCE OF 76.70 FEET; LEAVING SAID WEST RIGHT OF WAY LINE OF SOUTHWEST STREET, RUN THENCE NORTH 80 DEGREES 39 MINUTES 27 SECONDS WEST FOR A DISTANCE OF 289.02 FEET TO THE POINT OF BEGINNING.

PROPERTY ADDRESS: The street address of the property is believed to be **825 S WEST STREET, JACKSON, MS 39201**. In the event of any discrepancy between this street address and the legal description of the property, the legal description shall control.

Title to the above described property is believed to be good, but I will convey only such title as is vested in me as Substitute Trustee.

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION

OBTAINED WILL BE USED FOR THAT PURPOSE.

Rubin Lublin, LLC
428 North Lamar Blvd, Suite 107
Oxford, MS 38655
rlselaw.com/property-listing
Tel: (877) 813-0992
Fax: (470) 508-9401

PUBLISH: 08/11/2021, 08/18/2021, 08/25/2021, 09/01/2021