# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| STREETTOYZ CUSTOMS, LLC, | Case No. 3:21-CV-00585 |
| Plaintiff, | Hon. Tom S. Lee |
| | Magistrate Judge Robert P. Myers, Jr. |
| v. | |
| LENDTERRA, INC., RUBIN LUBLIN, LLC, SUBSTITUTE TRUSTEE, and JOHN DOES 1-5, | |
| Defendants. | |

### DEFENDANT LENDTERRA, INC.'S MEMORANDUM BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFF'S URGENT AND NECESSITOUS MOTION TO CONTINUE STATE COURT TEMPORARY RESTRAINING ORDER AND/OR MOTION FOR TRO

Defendant Lendterra, Inc. ("Lendterra"), through counsel, states as follows in support of its opposition to Plaintiff Streettoyz Customs, LLC's ("Streettoyz" or "Plaintiff") Urgent and Necessitous Motion to Continue State Court Temporary Restraining Order and/or Motion for TRO (Doc. 7) ("the Motion").[1]

## INTRODUCTION

Plaintiff, for the second time in as many months, seeks to forestall a foreclosure sale, currently scheduled for December 1, 2021, even though it does not contest that it received a commercial loan, signed a Deed of Trust with a power of sale, already was granted an extension to the loan's maturity date, and is in default. Plaintiff's Motion is not supported by any competent

---

[1] As an initial matter, given that Plaintiff's Motion was filed with notice to Defendants, and that Lendterra has an opportunity to respond, Plaintiff's Motion should be construed as a Motion for Preliminary Injunction. *See* Fed. R. Civ. P. 65.

03516556 v1

evidence and must be denied because Plaintiff has failed to carry its steep burden of demonstrating the appropriateness or necessity of injunctive relief.

While Streettoyz claims it is in need of an "accounting" and wants to pay the loan off, Lendterra previously provided Plaintiff with multiple payoff statements and Plaintiff never paid off the loan. Stated differently, the Motion is Plaintiff's latest delay tactic to forestall an inevitable foreclosure due to an admitted default. In addition, if Streettoyz truly has the ability to satisfy its obligations in advance of the December 1, 2021 foreclosure sale, Lendterra has attached yet another payoff statement to this response and Plaintiff remains free to remit payment in advance of the scheduled sale. Absent a payoff, however, this Court should deny the request for injunctive relief and allow the sale to move forward.

## RELEVANT BACKGROUND

### I.    The Loan and the Extension Agreement

On January 22, 2019, Lendterra loaned Streettoyz the original principal sum of $80,000.00. (**Exhibit A**, Declaration of Carla Jetton, ¶ 3). The Loan is evidenced, in part, by a promissory note ("the Note") in favor of Lendterra. (**Exhibit 1 to Exhibit A**, Note). The Note provides for a fixed interest rate of 16.25% per annum and, in the event of a default, a default rate in the amount of 23.99% per annum. (Note, p. 1). The Note also provides that the Loan would mature on the "earlier of (i) **February 1, 2020**, and (ii) the date on which the unpaid principal balance of this Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document." (*Id*., at ¶ 1(a), Definition of Maturity Date).

The Loan is an "interest- only" loan, to wit: "Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, accrued interest only shall be payable by Borrower in consecutive monthly installments due and payable

on the first day of each calendar month." (Note, p. 2, ¶ 3(d)).  Due to the interest-only arrangement of the Loan, the Note states clearly that a balloon payment will be required on the maturity date: "A balloon payment will be due upon full repayment of this Note even if this Note is not repaid until the Maturity Date."  (Note, p. 2, ¶ 3(b)).

The Note further provides that, "If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under Section 10, and all other amounts payable under this Note and any other Loan Document, shall at once become due and payable, at the option of Lender, without any prior notice to Borrower (except if such notice is required by applicable law, then after such notice)."  (Note, p. 3, ¶ 6).  The Note also provides for a late payment fee of 15% of the unpaid amount of any installment due, including at maturity.  (Note, p. 3, ¶ 7(a)).  Finally, the Note clearly provides that Plaintiff shall be liable to Lendterra for:

> "all expenses and costs, including Attorneys' Fees and Costs incurred by Lender or any Loan Servicer as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents (whether or not any lawsuit or other proceeding is instituted), including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay or any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding."

(Note, p. 4, ¶ 11).  The Loan is further evidenced by a Loan Agreement, which also provides that "Borrower shall pay all costs associated therewith [an Event of Default and Lender's exercise of its rights and remedies], including Attorneys' Fees and Costs."  (**Exhibit 2 to Exhibit A**, Loan Agreement, ¶ 6.02(a)).

To secure the Loan, Plaintiff granted, conveyed, and assigned to title to real property commonly known as 825 S. West. Street, Jackson, MS 39201 ("the Property") to McGehee Loan Closings Inc., as Trustee under that certain Deed of Trust, Assignment of Rents and Security

Agreement, which was recorded on January 24, 2019, Deed Book 7230 Page 3230 in the Office of the Hinds County Chancery Clerk at Jackson, Mississippi ("Deed of Trust").  (**Exhibit 3 to Exhibit A**, Deed of Trust).  On January 29, 2019, Lendterra assigned its interest as beneficiary in the Deed of Trust, together with the Note, to American Mortgage Fund I, LLC ("AMFI").  (**Exhibit 4 to Exhibit A**, Assignment).

The Deed of Trust contains an express power of sale.  (Deed of Trust, ¶ 22).  The Deed of Trust further states that "An Event of Default under the Loan Agreement shall constitute an Event of Default under this Instrument."  (Deed of Trust, ¶ 8).  The Loan Agreement defines an "Event of Default" to include "any failure by Borrower to pay or deposit when due any amount required by the Note, the Mortgage, this Loan Agreement or any other Loan Document" and "any failure by Borrower to maintain the insurance coverage required by Section 4.02…."  (Loan Agreement, ¶ 6.01(a)-(b)).

On January 13, 2020, Plaintiff executed an Extension of Promissory Note and Mortgage Agreement ("Extension Agreement").  (**Exhibit 5 to Exhibit A**, Extension Agreement).  In the Extension Agreement, Plaintiff agreed to pay the sum of $10,000.00 in exchange for a year extension of the Loan's maturity date to February 1, 2021. (Extension Agreement, at Recital C; *see also id*. at ¶ 5).  In the Extension Agreement, the Plaintiff reaffirmed its obligations under the Note and other Loan Documents (including the Deed of Trust) and affirmed that "the unpaid principal balance of the Loan is Eighty Thousand and 00/100 Dollars ($80,000.00) ("Unpaid Principal Balance"), exclusive of accrued and unpaid interest, late charges, attorneys' fees and costs and other fees and costs pursuant to the terms of this Loan."  (Extension Agreement, ¶ 2).  Plaintiff also broadly released Lendterra for all claims arising under the Loan through the date of the Extension Agreement.  (Extension Agreement, ¶ 9).

**II.     The September 8, 2021 Scheduled Foreclosure Sale, the Litigation, and the December 1, 2021 Scheduled Foreclosure Sale.**

Streettoyz failed to pay off the Loan on or before the February 1, 2021. (Exhibit A, Jetton Declaration, ¶ 9). Thereafter, on July 7, 2021, Lendterra caused a foreclosure to be commenced on behalf of AMFI and appointed Rubin Lublin, LLC ("Substitute Trustee"), as the Substitute Trustee under the Deed of Trust, in the place and stead of McGehee Loan Closings Inc. (**Exhibit B**, Recorded Substitution of Trustee). On July 15, 2021, Substitute Trustee sent Plaintiff a Notice of Acceleration and Foreclosure, which provided Plaintiff with a payoff and disclosed that a foreclosure sale had been scheduled for September 8, 2021. (Doc. 1-1, pgs. 29-35). In advance of the first sale, counsel for Lendterra provided counsel for the Plaintiff with a further breakdown of the amount due and owing through the date of the scheduled sale. (**Exhibit C**, Email between Matthew Mitchell and Cody Gibson with Payoff).

Plaintiff did not pay off the Loan in advance of the sale, but rather, on September 7, 2021, Plaintiff posted an Injunction Bond and obtained a Temporary Restraining Order from the Chancery Court of Hinds County, Mississippi. (Doc. 1-1, p. 2). The State TRO states that it "shall be in force and effect until" September 16, 2021, which was the date the state court set for a show cause hearing. (Doc. 1-1, p. 6).[2] On September 13, 2021, the Defendants removed the case to this Honorable Court. (Doc. 1).

Plaintiff now has filed the Motion seeking to extend the state TRO or to obtain a new TRO in order to stop the second foreclosure sale set for December 1, 2021. (Doc. 7). Plaintiff's Motion must be denied because Plaintiff has not met its burden of proving that the elements required for injunctive relief are present in this case.

---

[2] Miss R. Civ. P. 65(b) further provides that a temporary restraining order issued without notice "shall expire by its terms within such time after entry, not to exceed ten days…."

**STANDARD OF REVIEW**

"The grant or denial of a preliminary injunction rests in the discretion of the district court." *Canal Auth. Of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The U.S. Court of Appeals for the Fifth Circuit has described the elements of preliminary injunctive relief as follows:

> A preliminary injunction is an extraordinary remedy that should only issue if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). "[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the **movant clearly carries the burden of persuasion**." *Canal Auth. of Fla., supra* at 573. (emphasis added). Granting injunctive relief is "to be treated as the exception rather than the rule." *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996) (citation omitted).

**ANALYSIS**

**I.     Plaintiff Has Not Carried Its Burden of Demonstrating a Substantial Likelihood of Success on the Merits.**

In its Complaint, Plaintiff claims that Lendterra breached a contract, breached the implied duty of good faith and fair dealing, and is liable to provide an accounting.[3]

"The elements of breach of contract are: (1) the existence of a valid and binding contract; (2) breach of the contract by the defendant; and (3) money damages suffered by the plaintiff." *Guinn v. G.T. Wilkerson*, 963 So.2d 555, 558 (Miss. Ct. App. 2006). "All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Martindale v.*

---

[3] As Plaintiff has not articulated the basis for any of its claims in the Motion, except to state, "Plaintiff is entitled to an accounting to determine how much is owed" (Doc. 7, p.2, ¶ 7), Lendterra will analyze the elements of Streettoyz's pled claims together.

*Hortman Harlow Bassi Robinson and McDaniel PLLC*, 119 So.3d 338, 345 (Miss. Ct. App. 2012). "Good faith means 'the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party.'" *Id*. (citation omitted). "In contrast, bad faith requires 'a showing of more than bad judgment or negligence; rather, 'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Id*. (citation omitted).

Typically, an accounting only will be required upon "three grounds, to wit, the need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation." *Henry v. Donavan*, 148 Miss. 278; 114 So. 482, 484 (1927). The Mississippi Supreme Court has held that "the relationship between a mortgagor and mortgagee is not a fiduciary one as a matter of law." *Merchants & Planters Bank of Raymond v. Williamson*, 691 So.2d 398, 404 (Miss. 1997).

Plaintiff's Motion is devoid of any argument explaining how it is likely to succeed on the merits of its claims. While Plaintiff states that it "is attempting to pay off the loan, but Defendant has not provided an accurate figure," (Motion, Doc. 7, p.2, ¶ 7), its Motion does not articulate what provision of the Loan documents Lendterra breached, how enforcing rights under the Loan documents constitutes bad faith on Lendterra's part, or how Lendterrra's Loan accounting allegedly is inaccurate. To the contrary, Lendterra offered Plaintiff the Extension Agreement, thus giving Streettoyz an additional year to try and work out alternative financing or find some other way to pay off the Loan, and has provided Plaintiff with pay off statements on several occasions within the past year, as documented by the exhibits hereto. Under similar circumstances, courts within Mississippi rejected claims of unfair dealing as it relates to requests for an accounting, to wit:

> "We further find no basis in the record for the chancellor's finding that Temple–Inland's dealings with the Joneses were "unconscionable and unfair and totally

uncalled for." The Joneses signed a promissory note and deed of trust acknowledging that they would be in default if their monthly mortgage installments were not timely paid in full, allowing the lender to accelerate the debt and initiate foreclosure proceedings. Indeed, the chancellor expressly found that the Joneses were in default. They appear to labor under the misapprehension, however, that because Lomas did not pursue foreclosure proceedings despite the fact the Joneses remained at least one month in arrears during the entire time the mortgage was serviced by that company and frequently sent payments of less than the amount of the installment due, Temple–Inland now has treated them unfairly by enforcing its rights under the terms of the promissory note and deed of trust."

*Temple-Inland Mortgage Corporation v. Jones*, 749 So.2d 1161, 1166 (Miss. Ct. App. 1999).

Moreover, Plaintiff's claim that it has not been provided with an accounting of the amount due is simply untrue. For example, the pre-foreclosure demand letter from Rubin Lublin, which was attached to the Plaintiff's Complaint, contains a payoff statement. (Doc. 1-1, p. 25). The statement breaks down the amount required to forestall foreclosure as follows:

| | |
|---|---|
| Miscellaneous Fees: | $600.00 |
| Principal Balance: | $80,000.00 |
| Unpaid Charges: | $23,441.28 |
| Accrued Interest: | $2,025.82 |
| **Total:** | $106,067.10 |

(Doc. 1-1, p. 25).

In addition, and as Ms. Jetton states in her Declaration, Plaintiff and/or its representatives were provided with several additional payoff statements providing a breakdown of the Loan charges in advance of the foreclosure sale scheduled for September 8, 2021. (Jetton Declaration, ¶ 11). Lendterra's counsel similarly provided Plaintiff's counsel with a payoff statement in advance of the scheduled September 8, 2021 foreclosure sale. (Exhibit C, Email between Matthew Mitchell and Cody Gibson with Payoff). Finally, to the extent there is any ambiguity as to what is currently owed on the Loan, Lendterra has attached a payoff statement good-through December

1, 2021 to the Declaration of Ms. Jetton. Given that Plaintiff knows exactly what to pay in advance of the foreclosure sale, and in light of its failure to articulate what portion of the Loan charges he disputes and why, there are no grounds to enjoin the foreclosure action pending an accounting.

The Mississippi Supreme Court has denied injunctive relief under similar circumstances wherein a debtor failed to prevent evidence to support its claims:

> "The burden of proof was upon the appellees to show not only that they were entitled to the injunction against foreclosure of the deed of trust, and without the giving of a bond, (and in support of which alleged right no testimony was offered), but they were also required to prove that they had made payments on the indebtedness for which no credits had been given, or to otherwise show wherein the indebtedness claimed by appellant was incorrect. To meet this burden, appellees merely relied upon the item of $899.26 as "unpaid principal" shown in the statement rendered in October 1934, as of October 1, 1931, and also upon a claim of usurious interest, not pleaded, and which claim is unsupported by the proof."

*Federal Land Bank of New Orleans v. Brumfield*, 185 Miss. 487; 187 So. 522, 525 (1939) (citation omitted). The same result is required in this case. Because Plaintiff has failed to carry its burden of persuasion with respect to the first element of injunctive relief, its Motion must be denied.

**II.     Plaintiff Also Has Not Carried Its Burden of Persuasion with Respect to the Remaining Three Elements Required for Injunctive Relief.**

Plaintiff also has failed to make the requisite showing with respect to the remaining prerequisites for injunctive relief, including irreparable harm.

A similar claim was considered by the Court in *U.S. Bank National Association v. Lakeview Retail Property Owner LLC*, 2016 WL 626548 (S.D. Miss. February 16, 2016 (unpublished) (**Exhibit D**). In that case, the creditor (U.S. Bank) sought to foreclose a mortgage recorded against property owned by the debtor (Lakeview). *Id.*, at *1. Lakeview moved for preliminary injunctive relief and the Court held, "the Court is of the opinion that Defendant has not carried its burden on

any of the four prerequisites for the relief it requests, much less all of them." *Id*. In so holding, the U.S. District Court stated:

> "Regardless, and most compelling to the Court that there is no substantial threat of irreparable injury, Defendant has not challenged the foreclosure on the merits, i.e., has not argued that it is not in default under the subject loan or that the loan documents do not provide for foreclosure upon default. Rather, Defendant is simply seeking to delay an inevitable foreclosure."

*Id*. at *2. The Court in *Lakeview* also discussed the private and public interest facts, and stated "the Court is of the opinion that it would disserve the public interest to encourage delay tactics by companies that default on loans and that have no arguments as to the merits of the underlying default, at least insofar as a request for emergency relief is concerned." *Id*. at *3.[4]

The same result is required in this case. After it initially defaulted, Lendterra gave Plaintiff a year extension to the maturity date under the Loan. Plaintiff failed to avail itself of that additional time and, instead, defaulted. Thereafter, Plaintiff secured a temporary restraining order requiring the September 8, 2021 foreclosure sale be adjourned and, in the interim, has done nothing to meet its obligations under the Loan. This cancellation came after Lendterra already had incurred publication fees relating to the foreclosure by advertisement. Now, Plaintiff is seeking yet another cancellation of the foreclosure sale at the eleventh hour, again after Lendterra incurred additional costs to notice the property for sale. The public interest will not be served by allowing Plaintiff to continuously, and without the presentation of any evidence supporting its claims, forestall a valid

---

[4] Denying the request for an injunction does not leave Plaintiff remediless. As this Court recognized in *Teeuwissen v. JPMorgan Chase Bank, N.A.*, 894 F. Supp. 2d 903, 909 (S.D. Miss. 2012), borrowers may maintain a cause of action for wrongful foreclosure after a sale, provided of course that such a case can be proven. The continued viability of any claim it might prove after the sale does not support the proposition that Plaintiff will suffer irreparable harm in the event the December 1, 2021 foreclosure sale proceeds.

foreclosure sale. Simply put, Plaintiff's position is inequitable, it has not carried its burden of persuasion, and the foreclosure sale should be allowed to proceed as scheduled.

## CONCLUSION

For the foregoing reasons, Lendterra respectfully requests that Plaintiff's request for a temporary restraining order and injunction be denied.

Respectfully submitted, this 24th day of November, 2021.

>  /s/Amanda M. Beckett
>  AMANDA M. BECKETT (MS Bar No. 102738)
>  **RUBIN LUBLIN, LLC**
>  428 North Lamar, Suite 107
>  Oxford, Mississippi 38655
>  (205) 306-1953 (Telephone)
>  (470) 508-9203 (Facsimile)
>  abeckett@rlselaw.com
>
>  *Attorney for Lendterra, Inc. and*
>  *Rubin Lublin, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 24th day of November, 2021, filed the within and foregoing by CM/ECF, which will serve notice on all parties.

*/s/Amanda M. Beckett*

AMANDA M. BECKETT (MS Bar No. 102738)